UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 07-45-KSF

CONNIE OAKS                                                                                                    PLAINTIFF

V.                                           **OPINION & ORDER**

WILEY SANDERS TRUCK LINES, INC.                                                          DEFENDANTS
and JEFFREY D. OTT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of the defendants, Wiley Sanders Truck Lines, Inc. ("Wiley Sanders") and Jeffrey Ott ("Ott") (collectively, the "Defendants"), to exclude the testimony of the plaintiff's expert witnesses, Robert S. Barkhaus, Ph.D., Walter A. Guntharp, Jr. and Laura Lampton. The court, having reviewed the record and being otherwise sufficiently advised will DENY the motions.

I.      FACTUAL BACKGROUND

This case arises out of a collision between a tractor-trailer driven by Ott and owned by Wiley Sanders and a 1995 Dodge Stratus driven by the plaintiff, Connie Oaks. The collision occurred when Ott ran a stoplight at an intersection with U.S. 150 in December 2006. At the time of the collision Ott was an employee of Wiley Sanders. Defendants have admitted liability for the collision but contest the plaintiff's claim against Wiley Sanders for negligent hiring, training, retention, supervision and entrustment, and challenge the plaintiff's statement of damages. The plaintiff identified Dr. Barkhaus, Mr. Guntharp and Ms. Lampton as experts, and Defendants filed three motions to exclude their testimony.

## II. LEGAL STANDARD

As amended in 2000, Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court said in *Daubert*:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93. The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id*. at 593; Fed. R. Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Id*. However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role

of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) (The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system"). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony"). The Supreme Court provided a checklist for assessing the reliability of expert testimony. This list of "specific factors" "neither necessarily nor exclusively applies to all experts or in every case." *Id*. at 141. Listed considerations include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance." *Daubert*, 509 U.S. 593-94. Yet, the "list of factors was meant to be helpful, not definitive" and will vary from case to case. *Kumho Tire*, 526 U.S. at 151. *See also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one"). Thus, the trial court must use its discretion in determining whether reasonable criteria of reliability were used by a proffered expert and whether the proposed testimony meets those criteria. Nevertheless, "[t]he Rule's basic standard of relevance ... is a liberal one." *Daubert*, 509 U.S. at 587. The trial court's gatekeeping role does not permit it to reject admissible expert testimony.

3

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 noted that "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Advisory Committee Comments to the 2000 Amendments to Rule 702.

## III.   ANALYSIS

Defendants oppose the admission of testimony from three of the plaintiff's experts asserting that they fail the *Daubert* standard. The court will address the admissibility of each of these experts individually.

### A.   Robert S. Barkhaus, Ph.D.

Dr. Barkhaus is expected to testify regarding the plaintiff's post-injury vocational capacity. Defendants argue that Dr. Barkhaus' testimony should be excluded because his testimony is irrelevant and unreliable. Defendants argue that his opinions regarding the plaintiff's physical abilities have insufficient factual and scientific foundation. In support of this argument, Defendants assert that Dr. Barkhaus conducted no vocational testing, no market surveys and simply accepted the conclusions of the medical experts regarding her earning capabilities. Defendants challenge Dr. Barkhaus's methodology citing to his responses during his deposition that he did not know whether his methodology has a rate of error or whether any standards control its operation and that his work had never been subjected to peer review. Defendants also cite Dr. Barkhaus' statement that his opinions are "common sense" and argue that his testimony is not helpful to a jury.

Dr. Barkhaus is qualified as a vocational expert. He has training as a vocational expert, has

4

worked in the field for 30 years and holds various related certifications. He has extensive experience reviewing personal injury, social security and workers' compensation claims and has been published in the field on career assessment, planning and development. Further, Dr. Barkhaus' testimony is relevant and reliable. To formulate his opinions, he relied on a personal interview with the plaintiff and a review of the medical records. This is a standardized process and is in accordance with the process established by the American Board of Vocational Experts.

### B.     Walter Guntharp

Walter Guntharp specializes in "the evaluation of commercial driver performance, transportation companies' hiring and safety practices, operational practices and procedures and compliance with federal regulations and maintenance programs." In this case, he is expected to testify regarding industry standards for hiring, training and retaining drivers. Defendants argue that Mr. Guntharp's testimony should not be allowed because his opinions are beyond his experience and would not be helpful to a jury. Specifically, Defendants contend that Mr. Guntharp has never hired an entry-level truck driver such as Ott so he does not possess the qualifications to testify regarding industry standards about hiring such a driver.

Mr. Guntharp has been involved with the trucking industry in various capacities since 1976 and has trained more than 1000 drivers. He has attended numerous industry seminars and training programs, has been published regarding hiring and retention and other related safety topics and has provided a variety of services to companies in the trucking industry. "[A] proposed expert should not be required to satisfy an overly narrow test of his own qualifications." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981). Although Mr. Guntharp may have never hired an entry-level driver such as Ott, Mr. Guntharp has long-standing and extensive involvement in the trucking

5

industry that qualifies him to testify in this matter. Further, the court finds that Mr. Guntharp's methodology satisfies the standards in *Daubert* and *Kuhmo Tire*. Mr. Guntharp is within his area of expertise and relied on his review of Wiley Sanders' policies, common industry practices and his knowledge of the industry to reach his conclusions, a methodology which is generally accepted in the trucking industry and legal community.

### C.    Laura Lampton

Laura Lampton is expected to testify regarding the plaintiff's future medical and physical needs. In her report, Ms. Lampton presents a life care plan for the plaintiff. Ms. Lampton is qualified to testify about life care plans by her education, training and experience. She is a registered nurse and in her work as a nurse, she prepared medical care plans for patients. She has various certifications as a life care planner and has given numerous presentations on the topic.

Defendants argue that her report does not contain a statement of her own opinions nor the basis and reasons therefore and allege that her report is simply a compilation of information obtained from other people constituting hearsay. Further, Defendants argue that Ms. Lampton's methodology does not meet the classic reliability factors such as having been tested, having been subject to peer review and having an assessed rate of error. As explained in *Kuhmo Tire*, the reliability factors are "helpful, not definitive" and vary from case to case. *Kuhmo Tire*, 526 U.S. at 151. This court finds that Ms. Lampton's testimony meets the basic standard of relevance. Ms. Lampton used reasonable criteria of reliability in reaching her conclusions because she followed the procedures utilized in her field of expertise to develop the life care plan.

Defendants also challenge Ms. Lampton's inclusion in her life care plan of costs for a home health nurse because they contend that there is no medical evidence that such a nurse is necessary.

Since the court does not have sufficient evidence to make this determination at this time, it will entertain an objection by Defendants at trial to any testimony by Ms. Lampton regarding the need for a home health nurse to care for the plaintiff throughout her life. It is not clear from the record before the court if a medical professional recommended the need for such a provider and the court is unable to determine whether Ms. Lampton is qualified to testify that such services are necessary.

IV. CONCLUSION

Accordingly, **IT IS ORDERED**, that Defendants' motions to exclude the testimony of the plaintiff's experts, Robert S. Barkhaus, Ph.D. [DE 50], Walter A. Guntharp, Jr. [DE 52] and Laura Lampton [DE 51] are **DENIED**.

This 8th day of September, 2008.

Signed By:
*Karl S. Forester*  KSF
United States Senior Judge